MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
Randy K. Jones (141711)
Courtney Rockett (*pro hac vice forthcoming*)
Kara M. Cormier (*pro hac vice forthcoming*)
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:  (858) 314-1501

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STITCH EDITING LTD., <br><br> Plaintiff, <br><br> v. <br><br> TIKTOK, INC., TIKTOK LLC, TIKTOK LTD., and BYTEDANCE LTD., <br><br> Defendants. | Case No. **'21CV626   CAB BGS** <br><br> **COMPLAINT FOR:** <br><br> 1) **TRADEMARK INFRINGEMENT;** <br><br> 2) **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER THE LANHAM ACT;** <br><br> 3) **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200; and** <br><br> 4) **COMMON LAW FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION** <br><br> **JURY DEMANDED** |

Plaintiff Stitch Editing Ltd. ("Stitch"), by its attorneys, for its Complaint against defendants TikTok Inc., TikTok LLC, TikTok Ltd., and ByteDance Ltd. (collectively, "TikTok" or "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1. All claims asserted herein arise out of, and are based on, Defendants' willful infringement of Stitch's rights in its registered and incontestable STITCH EDITING trademark and its common law trademark rights in STITCH EDITING and STITCH (collectively, the "STITCH Mark").

2. Stitch is a critically acclaimed video-editing house that provides editing services for commercials and music videos out of its office in London and out of its licensee's office in Los Angeles, CA.

3. Its commercial brand customers include: ESPN, Louis Vuitton, Jägermeister, BMW, Heineken, Pizza Hut, Lego, and many others.

4. Its music video customers include heavy hitters such as: The Rolling Stones, Lady Gaga, Beyoncé, Ariana Grande, Powfu, Dua Lipa, Naughty Boy, and many others.

5. Stitch owns an incontestable federal trademark registration issued by the United States Patent and Trademark Office for its STITCH EDITING mark for, among other things, the editing of videos.

6. Stitch also has common law rights in its STITCH EDITING and STITCH marks for, among other things, the editing of videos.

7. TikTok is a technology company that develops, provides and supports a mobile software application called "TikTok," which allows users to create and share short-form videos.

8. In September 2020, TikTok released an editing feature that it branded "STITCH," with no regard for Stitch's longstanding prior rights and hard-earned goodwill in the STITCH Mark in the video-editing industry.

9. TikTok has continued to use the mark STITCH for its video-editing services, notwithstanding the facts that Stitch's federal trademark registration specifically covers "editing of . . . internet videos," among other services, and Stitch's common law trademark rights cover the same services.

10. From the date of its release, there have been approximately 235.9 billion views of infringing Stitch videos. That view count is increasing at a rate of approximately 900 million views per day.

11. TikTok refused to cease its infringement despite its receipt of a first notice to cease and desist on December 28, 2020, and a second notice to cease and desist on January 27, 2021.

12. Stitch continued to seek a fair and reasonable resolution from the date of those notices until the date of the filing of this action.

13. Since no resolution was forthcoming, and to protect its valuable STITCH Mark, Stitch was forced to file this action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; unfair competition under California Business & Prof. Code, § 17200 et seq.; and false designation of origin and unfair competition under California common law.  It seeks both equitable relief and damages.

**THE PARTIES**

14. Plaintiff Stitch is a UK entity founded in 2010.  Its principal place of business is in London, it is registered to do business in California, and it operates out of the offices of its licensee in Los Angeles for US-based projects.

15. Defendant TikTok Inc. is a California corporation having its principal place of business at 5800 Bristol Parkway, Culver City, CA 90230.

16. Upon information and belief, Defendant TikTok LLC is a Delaware limited liability company.

17. Upon information and belief, Defendant TikTok Ltd. is a Cayman Islands company.

18. Defendant ByteDance Ltd. was founded by Zhang Yiming in 2012 as a Cayman Islands company.  It is headquartered in Beijing and has offices in the United States.

19. Upon information and belief, TikTok Inc. is wholly owned by TikTok LLC, which, in turn, is wholly owned by TikTok Ltd., which, in turn, is wholly owned by ByteDance Ltd.

**JURISDICTION AND VENUE**

20. This Court has original jurisdiction over Plaintiff's federal claims pursuant to Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1331 and 1338(a) of the Judicial Code, 28 U.S.C. §§ 1331 and 1338(a).  This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of California pursuant to 28 U.S.C. §§ 1338(b) and 1367.

21. This Court has personal jurisdiction over TikTok Inc. because it is a California corporation with headquarters in Culver City, CA.  This Court also has personal jurisdiction over the other Defendants because, upon information and belief, these parent organizations are mere alter egos of TikTok Inc., having such a unity of interest and ownership that the separate personalities of the entities no longer exist.  In such circumstances, the failure to disregard their separate identities would

result in fraud or injustice.  Moreover, TikTok Ltd., TikTok LLC and ByteDance Ltd. have purposely directed their infringing content at citizens of this forum via the TikTok app and have therefore purposefully availed themselves of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of its laws.  As a result, the exercise of jurisdiction over these Defendants is reasonable and comports with fair play and substantial justice.

22. Venue is proper under 28 U.S.C. § 1391(b)(2) & (3) because TikTok Inc. is a California corporation and Defendants engage in business and promote their services under their infringing mark in this District.  Thus, a substantial part of the events or omissions giving rise to these claims occurred in or are directed at this District.

## STITCH EDITING'S BRAND AND TRADEMARKS

23. Stitch works with creative directors, advertising agencies, production companies, brand executives, video directors, music label executives, artists, and others to provide editing for commercials, music videos, and short videos that are viewed by hundreds of millions of people.

24. It operates from its office in London and from the office of its licensee in Los Angeles for clients around the globe and its work is critically acclaimed.[1]

25. Indeed, as of the date of this Complaint, it was ranked the top editing house in the UK by David Reviews, the leading industry publication.  See **Exhibit A**.

26. As a result of Stitch's renown in the industry, it has been approached twice to perform editing work on commercial advertisements for TikTok itself.  First, in early November 2020, TikTok – through a production company – sought to employ Stitch for commercial editing services.  Then, Stitch was approached again – via a production company – to bid on commercial work for TikTok in March 2021.[2]

---

[1] See, e.g., Sharks 2020 Short Film Awards, awarding Stitch the award for Best Editing for the film *Double Tap*: https://www.shots.net/news/view/sharks-short-film-awards-announce-2020-winners; Sharks 2021 Music Video Awards, awarding Stitch the award for Best Editing for the video *Criss Cross* for The Rolling Stones: https://kinsalesharks.awardsengine.com/?action=ows:entries.details&e=57387&project_year=2020; Sharks 2020 Short List for Dua Lipa "Physical" Music Video: https://kinsalesharks.awardsengine.com/?action=ows:entries.details&e=57259&project_year=2020.

[2] Stitch did not provide the requested services on either occasion.

27. Some of Stitch's recent commercials for well-known brands include: ESPN ("This is Sportscenter: The Manny"), Louis Vuitton ("Journey Home for the Holidays"), Jägermeister ("Be The Meister"), BMW (X2 commercial), Babybell Cheese ("Join the Goodness"), Heineken ("The Split"), Pizza Hut ("Now That's Delivery"), LG ("Got Your Laundry"), Payday ("Hammer"), Bumble ("When Dating Met 2020"), QuickBooks ("We Mean Business for Your Business"), Diesel ("Francesca"), Google ("A Feeling Called Home"), Lego ("Rebuild the Holidays"), Doritos ("Jukebox"), Nike ("Play Pinoy," "Flyknit" featuring Kobe Bryant and others, "T90 Laser: The Put it Where You Want it Tour," "Find Your Greatness"), Oppo ("Fantastic Bus"), KFC ("The Colonel"), Natwest ("Pennies"), Samsung ("Milk Music"), Mini, Rexona (post-production), and many others.

28. Some of the recent music videos that Stitch edited include those for the following hit songs: Death Bed, Coffee for Your Head (by Powfu), Physical (by Dua Lipa), Rain on Me (by Lady Gaga ft. Ariana Grande), Criss Cross (by The Rolling Stones), Runnin' (by Naughty Boy ft. Beyoncé), and many others.

29. Stitch has invested substantial time and resources building its goodwill in the STITCH Mark and protecting its valuable brand.

30. Stitch uses both the STITCH and STITCH EDITING marks to identify its services. For example, its LinkedIn, Instagram, Twitter, and Facebook pages and its website at www.stitchediting.tv all prominently display both marks, the sign on Stitch's London headquarters reads "STITCH," and the company is often credited for its work as simply "Stitch." As such, to consumers, STITCH identifies a single source when used in connection with video-editing services: the Plaintiff Stitch.

31. In addition to its common law rights in the STITCH EDITING and STITCH marks, Stitch has an international portfolio of trademark rights including incontestable trademark rights in the United States pursuant to US Reg. No 4,742,447 for its STITCH EDITING mark. A true copy of the registration from the United States Patent and Trademark Office is attached as **Exhibit B**.

32. The registration, which is incontestable, valid, subsisting, and in full effect, covers "editing of . . . internet videos," among other services.

# STITCH EDITING'S MARKET PRESENCE

33. Stitch has achieved a significant amount of commercial success, as is plainly evident from the brands and musicians with which it works and the accolades it consistently receives in the industry.

34. It has spent a substantial amount on promoting its brand, and it has generated tens of millions of dollars in revenue.

35. Its market exposure is vast and includes: companies and brands looking to create commercial advertisements, advertising agencies, production companies, directors, musicians, music labels, and others.

36. Stitch's market exposure also includes all the end-consumers who view the advertisements, film shorts, short videos, and music videos that credit Stitch for the work it has done.

37. The public has access to, and views, the videos that Stitch has edited on dozens of media: including on television, Stitch's website, video streaming services, such as YouTube, and social media platforms, such as TikTok.

38. As just one recent example, the Death Bed (Coffee for your Head) video that Stitch edited has appeared on TikTok.

39. In many cases, the videos explicitly credit Stitch as the editor (often as just "Stitch"), such as the music video for a song by Naughty Boy featuring Beyoncé, which has nearly 400 million views on YouTube alone.[3]

40. Even if a streaming link or video source does not directly credit Stitch, countless other sources publicize the association between Stitch and the commercial advertisements, film shorts, short videos, and music videos that it edits.[4]

---

[3] See https://www.youtube.com/watch?v=eJSik6ejkr0 ("VIDEO CREDITS" section lists "Leo King @ Stitch" as editor).

[4] See, e.g., https://www.sohonet.com/our-resources/blogs/stitch-editing-finds-bullet-proof-supervised-finishing-solution/ (crediting Stitch for LG "Got Your Laundry" commercial and Moschino Spring Summer 2021 Collection commercial); https://kinsalesharks.awardsengine.com/?action=ows:entries.details&e=52008&project_year=2020 (crediting Stitch for Jägermeister commercial); https://www.campaignlive.co.uk/article/pizza-hut-now-thats-delivering-iris/1696311 (crediting Stitch for Pizza Hut commercial); https://www.lbbonline.com/work/49483 (crediting Stitch for Bumble commercial); https://www.campaignlive.com/article/intuit-quickbooks-we-mean-business-business-wieden-kennedy-london/1703348 (crediting Stitch for Quickbooks commercial); https://www.lego.com/en-

6

## DEFENDANTS' MARKET PRESENCE

41. Defendants' TikTok app is a wildly popular video-sharing, social-networking app on which users make and share their own short-form videos having a duration of between 3 and 60 seconds, and in some cases up to 3 minutes.

42. The TikTok app is available in more than 200 countries.

43. As of September 2020, the TikTok app had over 100 million US monthly active users and approximately 50 million daily active users in the United States. Upon information and belief, that number has increased.

44. As of July 2020, the TikTok app had nearly 690 million global monthly active users. Upon information and belief, that number has increased.

45. By August 2020, the TikTok app surpassed two billion global downloads. Upon information and belief, that number has increased.

46. TikTok has also been trying to expand its market by moving beyond a mobile app to an app that is available on other platforms.

47. For example, upon information and belief, TikTok has partnered with Samsung – one of the world's largest suppliers of smart TVs – to roll out a TikTok TV app.

48. TikTok also has an app available on Google's Android TV platform[5] and an app called "More on TikTok" on Amazon Fire TV.[6]

49. Upon information and belief, millions of end users who use the TikTok app have also viewed one or more of the videos that Stitch has edited, many of which expressly credited Stitch for its work.

---

gb/aboutus/news/2020/november/rebuild-the-holidays/ (crediting Stitch for Lego commercial); https://clios.com/awards/winner/film-technique/nike/play-pinoy-76 (crediting Stitch for Nike "Play Pinoy" commercial); https://www.lbbonline.com/news/light-strong-nike-flyknit (crediting Stitch for Nike "Flyknit" commercial); https://www.campaignlive.co.uk/article/natwest-we-do-partnership-london/1672876 (crediting Stitch with Natwest commercial).

[5] See https://www.theverge.com/2021/2/3/22264642/tiktok-android-tv-launch-not-working-google.

[6] See https://www.theverge.com/2020/8/6/21357300/tiktok-amazon-fire-tv-app-launch-free-tv-mobile.

50. But TikTok markets itself to more than just end users; it aggressively markets itself to brands and businesses as an advertising platform and has been increasing its push into the advertising market.[7]

51. TikTok offers a variety of advertising formats ranging from airing short 3-5 second ads that show up in people's feeds, to buying in-feed 60-second ads, to creating influencer-led campaigns.[8]

52. TikTok markets its advertising services with slogans like: "Don't Make Ads. Make TikToks," "Discover a world full of people waiting to discover your brand," and "Maximize ROI by ensuring your most important audiences see your ads and track your performance in real-time."[9]

53. In fact, on February 1, 2021, TikTok partnered with WPP, the world's largest advertising company (as of 2019), to provide WPP's clients "unique access and capabilities on the TikTok platform." In its press release announcing the collaboration, TikTok states:[10]

> Recognizing the significant opportunities for brands that both short-form video and digital content continue to present, WPP will have early access to advertising products in development, ensuring WPP and its clients remain at the forefront of innovation as TikTok further develops its suite of products for brands.
>
> ***
>
> WPP will be the Lead Agency Development Partner to new creator-focused APIs, which will incorporate WPP's market leading brand safety methodology while leveraging unique brand and marketer data signals.

54. TikTok's Vice President of Global Business Solutions was quoted in that release as stating:

> Creative and media agencies play a major role in fueling [] creative campaigns, and we're excited to partner with a global innovator like WPP as we build for the future. We both share a common goal: to drive amazing campaigns for our clients that resonate with our growing audience . . ..[11]

55. In or about October 2020, TikTok even partnered with the Shopify e-commerce platform, which will allow its "more than 1 million merchants to create and connect their TikTok For

---

[7] See https://www.tiktok.com/business/en-US.
[8] See https://www.tiktok.com/business/en-US/apps/tiktok#4.
[9] Id.
[10] See https://newsroom.tiktok.com/en-us/tiktok-wpp-news.
[11] Id.

8

Business account to deploy In-Feed shoppable video ads directly within Shopify."[12]

56. TikTok lists many well-known brands that have achieved advertising success on the platform, including BMW, Clean and Clear, Doritos, Natwest, Universal Pictures, NYX, Kool-Aid, Mucinex, Chipotle, Bumble, Fendi, KFC, Oppo, Rexona, and Samsung.[13]

57. Out of those companies, Stitch has performed editing services for at least BMW, Doritos, Natwest, Bumble, Oppo, Rexona, Mini and Samsung.

58. In addition to its efforts to expand into the commercial advertising world, TikTok has also been working to expand into the music industry.

59. TikTok touts that its app "became America's go-to platform for music discovery, as well as a launching pad for smash hits by artists of all genres." [14]

60. TikTok also touts that Powfu broke out on TikTok's platform.[15]

61. Stitch edited the music video for Powfu's hit song, Death Bed, Coffee for Your Head, which has become a TikTok phenomenon.

62. The music video itself, or excerpts therefrom, appear in several TikTok posts as of the date of this Complaint.

63. TikTok has also entered into licensing deals with Warner Music Group,[16] ICE,[17] and Sony Music,[18] and at least the Sony deal allows Sony "to use TikTok's platform . . . to promote its artists."[19]

64. TikTok is thus working with the same music labels with which Stitch works.

---

[12] See https://www.zdnet.com/article/shopify-inks-commerce-partnership-with-tiktok/.

[13] See https://www.tiktok.com/business/en-US/inspiration?country=US.

[14] See https://newsroom.tiktok.com/en-us/year-on-tiktok-music-2020.

[15] Id.

[16] See https://www.musicbusinessworldwide.com/warner-music-group-inks-licensing-deal-with-tiktok/.

[17] See https://www.musicbusinessworldwide.com/tiktok-inks-multi-year-licensing-deal-with-ice/.

[18] See https://finance.yahoo.com/news/tiktok-signs-deal-sony-music-170116348.html?guccounter=1&guce_referrer=aHR0cHM6Ly9lbi53aWtpcGVkaWEub3JnLw&guce_referrer_sig=AQAAAJooWnNXFPz_44gHjCUovo0cmMM_cMC8u5xfFWD1QV2Jowm4EpQ8l2AdndzmieDr0JRuRgutwAKYLHDrE4-WND4-ZAwYxqusQxlHWfKblfQT62bxNZFSJ98QkGBbEKeuRXWJzk7DTPDXLkNIuOG0VAdbC2PdFuxkCKheegxGnMmk.

[19] Id.

9

65. TikTok advertises itself to, solicits business from, and works with, the same client-brands, advertising agencies, production companies, directors, music labels, and artists (among others) as Stitch.

66. TikTok thus reaches millions (if not more) of the same end users that Stitch reaches.

### DEFENDANTS' UNLAWFUL ACTS

67. On September 3, 2020, TikTok released an editing feature branded as "Stitch" (the "Infringing Mark"), stating in a press release:

> Today, we're excited to announce the launch of a new editing feature called Stitch, which introduces yet another way for users to engage with the world of content that's made and shared every day by the ever-creative TikTok community.
>
> Stitch allows users the ability to clip and integrate scenes from another user's video into their own. Like Duet, Stitch is a way to reinterpret and add to another user's content, building on their stories, tutorials, recipes, math lessons, and more.
>
> . . . Every video made with Stitch attributes the original creator in the new video's caption, and the caption attribution links directly to the original, clipped video.[20]

68. The press release goes on to instruct users how to edit videos using the new STITCH editing feature.

69. TikTok's use of the term "Stitch" is capitalized and in the form of a trademark.

70. The post by the official @tiktok account announcing the feature makes clear that "Stitch" is a brand, by capitalizing its use and pronouncing: "Now introducing STITCH! Make the ultimate collab with your fav creators."

71. The post displays "Stitch" in a blocky, sans-serif, white, font that mimics the same way the STITCH Mark is used in the marketplace:

---

[20] https://newsroom.tiktok.com/en-us/new-on-tiktok-introducing-stitch

10

| TikTok's Infringing Use | Stitch's Mark |
|---|---|
|  |  |

72. And once posted, each resulting video edited with TikTok's "STITCH" editing feature has a caption that includes the hashtag "#stitch."

73. As of the date of this Complaint, there have been approximately 235.9 billion views of TikTok videos created using its STITCH editing feature.



74. Upon information and belief, TikTok derives revenue from each and every one of these views.

75. Upon information and belief, TikTok's STITCH editing feature is available in all countries in which the TikTok app is available.

76. Defendants are not associated or affiliated with Stitch and have never been authorized or otherwise licensed to use the Infringing Mark in connection with any products or services.

11

77. Thus, on December 28, 2020, Stitch served a cease-and-desist letter on TikTok.

78. TikTok responded by rejecting the claims of infringement and refusing to cease use of the Infringing Mark.

79. Stitch served a second cease-and-desist letter on January 27, 2021, explaining why TikTok's denial of the alleged infringement was misguided.

80. Although Stitch sought to reach a fair and reasonable resolution that involved TikTok ceasing its use of the Infringing Mark plus compensation for the significant amounts of past infringement, it was unable to do so.

## **INJURY TO STITCH**

81. TikTok's use of the Infringing Mark is likely to confuse, mislead, or deceive consumers into believing that TikTok's STITCH editing feature originates from, or is associated with, sponsored by, or affiliated with Stitch, when it is not (*e.g.*, forward confusion), or conversely, that Stitch's services originate from, or are associated with, sponsored by, or affiliated with TikTok, when they are not (*e.g.*, reverse confusion).

82. The goodwill that Stitch has amassed in the STITCH Mark is put at risk by TikTok's appropriation and use of the Infringing Mark. TikTok's unauthorized acts unfairly and unlawfully wrest from Stitch control of its STITCH Mark and its reputation, particularly as Stitch has no control over the quality of TikTok's services offered under the Infringing Mark. As a result, Stitch's valuable reputation is being irreparably damaged. If TikTok's conduct is not enjoined, it will continue to injure the value of Stitch's STITCH Mark and the ability of those marks to indicate service emanating from a single source, namely, Stitch.

83. Stitch has no adequate remedy at law to forestall TikTok's ongoing infringement.

84. Stitch is being, and will continue to be, irreparably injured and harmed by TikTok's unlawful conduct.

85. In addition, Stitch has been damaged by TikTok's past infringement.

86. Stitch is also faced with the momentous task of correcting the misimpressions resulting from TikTok's infringement.

87. In the short period of time that TikTok has been utilizing the Infringing Mark, there have been in excess of 235.9 billion views of content that displays the Infringing Mark on the TikTok platform.

88. Literature provides that it takes at least three impressions to correct each misimpression.[21]

89. Therefore, the amount of impressions that will be necessary to reverse the effect of TikTok's infringement is nearly half a trillion. The cost of such an endeavor is astronomical.

**FIRST CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

90. Stitch hereby repeats and realleges each of the allegations set forth in this Complaint.

91. Defendants have used the Infringing Mark in commerce in connection with the sale, offering for sale, distribution, and advertising of Defendants' goods and services.

92. Defendants' actions are likely to cause confusion, mistake, and deception as to the origin, sponsorship, or approval of the Defendants' products or commercial activities, and thus constitute infringement of the registered STITCH Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

93. Defendants had actual knowledge of the registered STITCH Mark at least after the December 28, 2020 cease-and-desist letter.

94. By virtue of Stitch's federal registration, Defendants were on constructive notice of Stitch's ownership of the STITCH Mark pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072. Moreover, Defendants knew or should have known about the registered STITCH Mark because even a cursory search of US trademark filings would have shown that Stitch already had rights in it.

95. Nevertheless, Defendants have persisted in their forward and reverse infringing conduct, rendering such conduct knowing and willful.

96. This Court and the Lanham Act have extraterritorial jurisdiction over Defendants' trademark infringement abroad as well because (1) the foreign infringement affects United States

---

[21] See, e.g., PODS Enters., LLC v. U-Haul Int'l, Inc., 126 F. Supp. 3d 1263, 1283-85 (M.D. Fl. 2015) (discussing several experts' review of literature); Corrective Advertising Guidelines, Compliance: Business Issues Information, Commerce Commission, New Zealand, Issue #20, July 2000.

commerce in a manner that is sufficiently great to be a cognizable injury to Stitch under the Lanham Act and (2) the interests of and links to United States commerce are sufficiently strong in relation to those of any other nation to justify, in terms of comity, an extraterritorial application of the Lanham Act.

97. First, infringing STITCH videos posted abroad can be and are viewed by users located in the United States.

98. In addition, infringing STITCH videos posted in the United States can be and are viewed by users abroad.

99. As such, Defendants' infringement abroad not only affects United States commerce, but also is inextricably intertwined with the domestic infringement and therefore infringes upon Stitch's US trademark rights.

100. Second, the interests of American commerce and the links thereto are sufficiently strong in relation to the interests of other nations because:

   a. Protection against Defendants' trademark infringement under US law for conduct affecting US commerce does not conflict with the laws or policies of other countries because there are no ongoing trademark disputes or proceedings in any other country among the parties to this action.

   b. Stitch works out of the offices of its licensee in Los Angeles, is registered to do business in California, and edits commercials and music videos for many well-known US companies for distribution in the US. In addition, TikTok Inc. is a California corporation, TikTok LLC is a Delaware company and Defendants have principal US offices in both states and operate within the American commerce streams.

   c. The United States and this Court have a superior ability to achieve compliance with United States' trademark laws as compared with courts in any foreign jurisdiction because Defendants have purposefully subjected themselves to compliance with the laws of this country by organizing themselves under the laws of Delaware and California and they orchestrated their infringing activities from the United States. Moreover, there is nothing to suggest that this Court would have difficulty enforcing a damages award against Defendants.

   d. The relative effects of Defendants' infringement in the United States exceed the effects in other countries given that the number of TikTok users in the US is 300% more than the next highest number from any other country (as of August 2020).

   e. Defendants' infringement has been intentional and in willful disregard of the notice provided in the cease and desist letters, which conduct demonstrates an explicit purpose to harm American commerce.

14

f.   Defendants' intentional infringement also renders the negative effect of infringement foreseeable as a matter of law.  The harm and effect on U.S. commerce was also foreseeable to Defendants in light of the massive market presence that the TikTok app has in the United States.  Defendants knew or should have known that given their market reach, their infringement of a U.S. trademark would render significant harm to the trademark owner.

g.   Defendants' conduct in the United States is more important to the Lanham Act violations than their conduct abroad because the amount of infringement in the US exceeds the amount of infringement abroad and Defendants are using American commerce streams to accomplish their infringement.

101.   As a direct and proximate result of Defendants' willful actions, conduct, and practices, Stitch has been damaged and will continue to suffer irreparable harm.

**SECOND CLAIM FOR RELIEF**
**FALSE DESIGNATION OF ORIGIN**
**AND UNFAIR COMPETITION (15 U.S.C. § 1125(A))**

102.   Stitch repeats and realleges each of the allegations set forth in this Complaint.

103.   Defendants' actions are likely to cause confusion, mistake, and deception as to the origin, sponsorship or approval of Defendants' products, services, or commercial activities, and thus constitute false designation of origin, passing off, and unfair competition with respect to the STITCH Mark, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

104.   Defendants' use of the Infringing Mark and other actions alleged herein, constitute proscribed acts of unfair competition.

105.   The harm of such unfair competition outweighs its utility, has the effect of confusing and deceiving consumers, and trades off the goodwill of Stitch.

106.   On information and belief, such unfair competition was designed specifically to, and willfully does, maximize the likelihood of confusion.

107.   This Court and the Lanham Act have extraterritorial reach over these acts for the same reasons alleged with respect to the claim for federal trademark infringement alleged above.

108.   As a direct and proximate result of Defendants' willful actions, Stitch has suffered resulting damages, and Defendants have enjoyed resulting profits from the confusion, in an amount to be established upon proof at trial.

109. Stitch is entitled to damages, and further entitled to an accounting of infringing profits as unjust enrichment, for willfulness or for deterrence.

110. If Defendants' wrongful conduct is not enjoined, Stitch will continue to suffer irreparable harm.

### THIRD CLAIM FOR RELIEF
### UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE (§ 17200 ET SEQ.)

111. Stitch repeats and realleges each of the allegations set forth this Complaint.

112. Each of Defendants' acts and omissions alleged herein, including trademark infringement, and unfair competition harms Plaintiff and constitutes unlawful and unfair business acts or practices within the meaning of Section 17200 et seq. of the California Business and Professions Code.

113. Defendants have engaged in unfair competition by the acts alleged herein.

114. Defendants' acts and omissions alleged herein constitute unfair business practices because the harm of these business practices outweighs the utility, if any, of these business practices, and are unscrupulous and injurious to consumers.

115. Defendants' acts and omissions alleged herein constitute unlawful business practices because Defendants' conduct is forbidden by multiple laws, including but not limited to 15 U.S.C. §1125(a), as well as the common laws, laws of the State of California and laws of the United States.

116. Defendants have engaged in these activities willfully and consciously.

117. Defendants' activities have caused and will continue to cause damage to Stitch, in an amount to be determined at trial.

118. As a direct and proximate consequence of the unfair and unlawful business practices complained of herein, Plaintiff has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of unfair competition.

### FOURTH CLAIM FOR RELIEF
### COMMON LAW FALSE DESIGNATION
### OF ORIGIN AND UNFAIR COMPETITION

119. Stitch repeats and realleges each of the allegations set forth in this Complaint.

120. Defendants are promoting, advertising, and providing editing services under the Infringing Mark, which is identical to and/or virtually identical to the STITCH Mark, in violation of California's common law of unfair competition.

121. Defendants' unauthorized use of the Infringing Mark for services identical and/or closely related in type to those provided by Stitch under the STITCH Mark is likely to cause confusion or to cause mistake or to deceive the parties' customers or potential consumers and the public as to the source or sponsorship of parties' services. Consumers are likely to be misled into believing that Defendants' services are licensed by, sponsored by, approved by or otherwise associated with Stitch, or that Stitch's services are licensed by, sponsored by, approved by or otherwise associated with Defendants.

122. Defendants' activities have caused and will continue to cause damage to Stitch, in an amount to be determined at trial.

123. As a direct and proximate consequence of the false designation of origin and unfair competition herein, Stitch has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing such further acts.

## **PRAYER FOR RELIEF**

WHEREFORE, Stitch requests that this Court enter judgment in its favor on each and every claim for relief set forth above, and award it relief including, but not limited to, the following:

A.    Judgment in favor of Stitch and against Defendants;

B.    A preliminary and a permanent injunction enjoining Defendants and their officers, agents, employees, directors, shareholders, subsidiaries, related companies, affiliates, and all persons in active concert or participation with any of them from using the Infringing Mark or any designation or design so similar as to be likely to cause confusion, mistake, or deception in connection with Defendants' goods and services;

C.    An Order requiring Defendants to account for, and pay to, Stitch any and all of Defendants' profits arising from the foregoing acts, and trebling such profits for payment to the Plaintiff in accordance with 15 U.S.C. § 1117;

D.An Order requiring Defendants to pay Stitch compensatory and/or actual damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117;

E.An Order requiring Defendants to pay corrective advertising in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117;

F.An Order, where appropriate, requiring Defendants to pay an appropriate amount as punitive damages to deter future unlawful misconduct and to prevent future confusion or deception of the public;

G.Pre-judgment interest and post-judgment interest at the legally allowable rate on all amounts allowed;

H.Restitution;

I.Statutory damages as allowed by law;

J.An Order requiring Defendants to pay Stitch its costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117; and

K.Such other relief as the Court may deem appropriate.

Dated:  April 12, 2021Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*_____
Andrew D. Skale (211096)
Randy K. Jones (141711)
Courtney Rockett (*pro hac vice forthcoming*)
Kara M. Cormier (*pro hac vice forthcoming*)

Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues triable of right by a jury.

Dated:  April 12, 2021

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*
Andrew D. Skale (211096)
Randy K. Jones (141711)
Courtney Rockett (*pro hac vice forthcoming*)
Kara M. Cormier (*pro hac vice forthcoming*)
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:  (858) 314-1501

Attorneys for Plaintiff